Filed 11/6/15  P. v. Biane CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PAUL ANTOINE BIANE et al.,<br><br>    Defendants and Respondents. | E061951<br><br>(Super.Ct.No. FSB1102102)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The petition for rehearing filed on October 27, 2015, is denied.  The opinion filed in this matter on October 14, 2015, is modified as follows:

On page 11, footnote 5 should be added after the last sentence on that page, which ends with ". . . described in section 803(c)."  All subsequent footnotes should be renumbered accordingly.  The last full sentence on page 11, including the new footnote should read as follows:

1

Given these facts, we are not persuaded that the Legislature intended to exclude conspiracies to commit target offenses that are based on misconduct in office but at the same time to include conspiracies that are themselves based on misconduct in office, even though their target offenses are not crimes enumerated or described in section 803(c).[5]

These modifications do not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:


HOLLENHORST

Acting P. J.


MILLER

J.

_____

[5] The Attorney General contends that the introductory phrase of section 801.5, "[n]otwithstanding Section 801 or any other provision of law," resolves any latent ambiguity in sections 801.5 and 803 with respect to the Legislature's intentions regarding the applicability of section 801.5 to conspiracy. We would ordinarily give great weight to that language as reflecting the Legislature's intent to override any existing provisions of law to the contrary. (See *People v. Benson* (1998) 18 Cal.4th 24, 31-32.) However, a latent ambiguity exists "where '"some extrinsic evidence creates a *necessity* for interpretation or a choice among two or more *possible meanings*." [Citation.]'" (*Coburn v. Sievert, supra*, 133 Cal.App.4th at p. 1495, quoting *Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495, fn. 18.) Here, as we discuss, there is extrinsic evidence that despite that language, the Legislature did *not* intend to extend the statute of limitations for conspiracy.

Filed 10/14/15  P. v. Biane CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E061951 |
| v. | (Super.Ct.No. FSB1102102) |
| PAUL ANTOINE BIANE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, Deputy Attorney General; Michael A. Ramos, District Attorney, and Michael Abney, Deputy District Attorney, for Plaintiff and Appellant.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Respondent Paul Antoine Biane.

1

Arent Fox, Stephen G. Larson, Mary Carter Andrues, Jonathan E. Phillips; Law Offices of Dennis A. Fischer and Dennis A. Fischer for Defendant and Respondent Jeffrey Scott Burum.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Respondent Mark Allen Kirk.

Law Office of Rajan Maline and Rajan Maline for Defendant and Respondent James Howard Erwin.

INTRODUCTION

Defendants and respondents Paul Biane, Mark Kirk, James Erwin and Jeffrey Burum are defendants in a long-running political corruption prosecution, which has been the subject of several prior appeals. At issue in this appeal is the trial court's order sustaining the defendants' demurrers to count 1 of the indictment, without leave to amend, and the subsequent dismissal of that count, based on the trial court's conclusion that the conspiracy alleged in count 1 was subject to a three-year statute of limitations and that the prosecution was time-barred. The Attorney General contends that count 1, as an offense "the basis of which is misconduct in office," (Pen. Code, § 803, subd. (c)) is governed instead by the four-year statute of limitations provided for in Penal Code section 801.5, and that the prosecution of count 1 is therefore not time-barred. We disagree, and we will affirm the judgment of dismissal as to count 1.

2

As stated in *People v. Biane* (2013) 58 Cal.4th 381 (*Biane I*), the factual background is as follows:

"On May 9, 2011, a grand jury issued a 29-count indictment against Paul Antoine Biane, a member of the San Bernardino County Board of Supervisors; Mark Kirk, chief of staff for a different member of the board of supervisors; defendant Jeffrey Burum, a general partner in Colonies Partners, L.P. (Colonies); and defendant James Erwin, who was an agent for Burum. The indictment alleged that these individuals conspired together with William Postmus, who was the chairman of the board of supervisors and who has already pleaded guilty and agreed to aid the prosecution, to settle a lawsuit brought by Colonies against San Bernardino County (County) on terms favorable to Colonies in exchange for a contribution of $100,000 each to political action committees controlled by Biane, Kirk, Erwin, and Postmus. Among other charges, the indictment accused Burum and Erwin of conspiracy to accept bribes to influence the vote of a public official (Pen. Code, §§ 86, 165), to misappropriate public funds (Pen. Code, § 424), to commit a criminal conflict of interest (Gov. Code, § 1090), and to improperly influence a legislative action (Gov. Code, § 9054) (count 1; Pen. Code, § 182, subd. (a)(1)), and of aiding and abetting the acceptance of bribes by Postmus and Biane (counts 4, 5, 7, and 8; Pen. Code, §§ 86, 165).

"According to the indictment, Colonies is the owner of a 434-acre parcel of land in Upland that was intended for residential and commercial development. The parcel includes a 67-acre flood control basin over which the County had asserted easement

rights.  Colonies spent $23.5 million on flood control improvements and requested that the County reimburse those costs.  When the County declined, asserting that the 67-acre basin itself was sufficient for flood control without improvements, Colonies sued the County in March 2002, challenging the County's easements and claiming that it had been deprived of its ability to develop the flood control basin.  In July 2005, the Court of Appeal ruled in favor of the County as to 30 acres of the easement established in 1933 but found issues of fact remained as to the applicability and extent of a 1939 easement.

"The indictment alleges that Burum, on behalf of Colonies, then concocted a scheme to obtain a settlement of this litigation 'through corrupt means':  a combination of threats, extortion, bribery, and inducements to secure votes for a favorable termination of the litigation from the five-member board of supervisors.  Burum's agent, Erwin, conspired with Burum and conveyed threats and inducements from Burum to Postmus and Biane, who were members of the board of supervisors, and to Kirk, who was chief of staff to Gary Ovitt, a member of the board of supervisors.  Erwin agreed to accept money from Burum in exchange for influencing the votes of Postmus and Biane.  Kirk agreed to accept money in exchange for influencing Ovitt's vote.  Postmus and Biane joined the conspiracy by agreeing to accept the bribes.

"The indictment recites that Postmus, after being provided cash, meals, and entertainment of various kinds by Burum during a trade mission to China, announced to the County's administrative officer on September 20, 2005, 'We've got to settle this Colonies thing'; that Burum offered money to Erwin to assist in obtaining votes for the settlement; that Burum offered money to Kirk if he could deliver Ovitt's vote for the

4

settlement; that Burum offered money to Biane in exchange for a favorable settlement from the County; and that Burum campaigned against Measure P (a ballot measure to increase the salary of the members of the board of supervisors) as a means of exerting pressure on Biane. Erwin told Postmus's staff that Burum had hired private investigators to sift through the board chair's trash for incriminating information, and threatened to distribute mailers to voters claiming that Postmus was addicted to drugs, as a means of pressuring him to secure Biane's vote. As a means of pressuring Biane directly, Erwin created mailers related to the Measure P campaign asserting that Biane was in debt and unable to pay his bills.

"In October or November of 2006, Burum and Postmus discussed the prospect of a settlement at the Doubletree Hotel in Ontario, using Erwin as an intermediary. During one meeting, Burum had a courier deliver 'hit piece' mailers relating to Measure P in an effort to intimidate Postmus. Postmus and Biane eventually agreed to vote to approve a settlement favorable to Colonies in exchange for a bribe. Kirk agreed, in exchange for a bribe, to urge Ovitt to support the settlement.

"On November 28, 2006, over the objections of San Bernardino County Counsel as well as private attorneys retained by the County, Postmus, Biane, and Ovitt provided the necessary three votes on the five-member board of supervisors to approve a $102 million settlement with Colonies. In the months following the County's initial payment of $22 million to Colonies, Colonies made three separate payments of $100,000 each to political action committees controlled, secretly or otherwise, by Biane, Kirk, and Erwin, and two payments of $50,000 each to political action committees secretly controlled by

5

Postmus.  Each of these conspirators funneled money from the committees for his own personal benefit.  Biane, Kirk, and Erwin failed to report these payments on their Fair Political Practices Commission statement of economic interest forms or on their income tax returns."  (*Biane I*, *supra*, 58 Cal.4th at pp. 385-387.)

PROCEDURAL HISTORY

Count 1 alleges that in violation of Penal Code section 182, subdivision (a)(1), defendants conspired to commit the crimes of supervisor accepting a bribe (Pen. Code, § 165); asking for/receiving a bribe (Pen. Code, § 86); misappropriation of public funds (Pen. Code, § 424); obtaining a thing of value to improperly influence a legislative action (Gov. Code, § 9054); and conflict of interest (Gov. Code, § 1090).  It further alleges that in violation of Penal Code section 182, subdivision (a)(4), defendants conspired to cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises, and that in violation of Penal Code section 182, subdivision (a)(5), defendants conspired to commit any act injurious to the public health, the public morals, or to pervert or obstruct justice, or the due administration of justice.[1]  The indictment further alleges that the object of the conspiracy was to illegally obtain $102 million from the County of San Bernardino for personal gain, and for certain public officials to profit from those gains.

---

[1]  All further statutory citations refer to the Penal Code unless a different code is specified.

Burum demurred to count 1 or, in the alternative, moved to dismiss it as time-barred, arguing that the statute of limitations for conspiracy is three years, commencing from the commission of the last overt act alleged.[2]  The last overt act alleged took place on July 12, 2007.  The indictment was filed more than three years later, on May 5, 2011.  The prosecution argued, however, that count 1 was subject to the four-year statute of limitations, which commences upon discovery of the offense, as provided in section 801.5 and section 803, subdivision (c) (hereafter section 803(c)).

The trial court held, based on the decision in *People v. Milstein* (2012) 211 Cal.App.4th 1158 (hereafter *Milstein*), that all conspiracies, regardless of their target offenses, are subject to the three-year statute of limitations.  It sustained the demurrer without leave to amend as to count 1 and dismissed count 1.  The trial court sustained the demurrer with respect to other counts of the indictment but granted leave to amend as to those counts.  The court stated that the prosecution could include count 1 in an amended indictment in order to preserve the issue for appeal or writ proceedings.  The first amended indictment realleged count 1.  Defendants again demurred.  The court sustained the demurrer and stated that its ruling was retroactive to the date of its original ruling. The prosecution filed a timely notice of appeal.

---

[2]  Burum demurred to and/or sought to dismiss counts 1, 4, 5, 7, 8 and 13 of the indictment due to the expiration of the applicable statutes of limitations.  The dismissal of count 1 is the sole issue on appeal.

Biane also filed a demurrer to count 1 and other counts.  The other defendants joined in the demurrers as to count 1.

7

CONSPIRACY TO COMMIT CRIMES BASED ON MISCONDUCT IN PUBLIC

OFFICE IS NOT SUBJECT TO SECTIONS 801.5 AND 803(c)

*Standard of Review*

This appeal involves both the sustaining of a demurrer and the interpretation of a statute. A demurrer to an accusatory pleading raises only issues of law (*People v. Biane* (2013) 58 Cal.4th 381, 388 (*Biane I*); § 1004), and we independently determine whether the charging document states a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) We assume the truth of all material factual allegations and matters subject to judicial notice. (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524.) The interpretation of a statute also presents a question of law that is subject to de novo review. (*Coito v. Superior Court* (2012) 54 Cal.4th 480, 488.) In construing a statute, our objective is to ascertain and give effect to the Legislature's intent in enacting the statute. (*People v. Skiles* (2011) 51 Cal.4th 1178, 1185.)

*Summary of the Issue*

Section 801.5 provides that prosecution of any offense "described in subdivision (c) of Section 803 shall be commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later." Section 803(c) provides, in pertinent part: "A limitation of time prescribed in this chapter does not commence to run until the discovery of an offense described in this subdivision. This subdivision applies to an offense punishable by imprisonment in the state prison or imprisonment pursuant to subdivision (h) of

Section 1170, a material element of which is fraud or breach of a fiduciary obligation, . . . or the basis of which is misconduct in office by a public officer, employee, or appointee . . . ."  Section 803(c) lists a number of specific offenses to which it applies, but the list is "neither exclusive nor exhaustive."[3]  (*Milstein*, *supra*, 211 Cal.App.4th at p. 1167.)  Accordingly, a crime which is not enumerated in section 803(c) but meets one of the general descriptors in subdivision (c) is subject both to the four-year statute of limitations provided for in section 801.5 and the discovery provision provided for in section 803(c).

The crime of conspiracy is normally subject to a three-year statute of limitations, which commences to run with the commission of the last overt act in furtherance of the conspiracy.  (*Milstein*, *supra*, 211 Cal.App.4th at p. 1165; § 801.)  This limitation applies regardless of the statute of limitations which applies to any target offense—for example, murder has no statute of limitations (§ 799), but conspiracy to commit murder is subject to the three-year statute of limitations.  (*Milstein*, at pp. 1166-1167.)  The Attorney General argues, however, that section 803(c) encompasses conspiracies "the basis of

---

[3]  The enumerated offenses are Penal Code sections 68, 86 and 93 (Pen. Code, § 803(c)(1)); Penal Code sections 72, 118, 118a, 132, 134, and 186.10 (Pen. Code, § 803(c)(2)); Corporations Code sections 25540, "of any type," and 25541 (Pen. Code, § 803(c)(3)); Government Code sections 1090 and 27443 (Pen. Code, 803(c)(4)); Welfare and Institutions Code sections 11483 and 14107 (Pen. Code, § 803(c)(5)); Insurance Code sections 548, 550, and 1871.4, and former section 1871.1 (Pen. Code, § 803(c)(6)); Business and Professions Code sections 580, 581, 582, 583, and 584 (Pen. Code, § 803(c)(7)); Business and Professions Code section 22430 (Pen. Code, § 803(c)(8)); Health and Safety Code section 103800 (Pen. Code, § 803(c)(9)); Penal Code section 529a (Pen. Code, § 803(c)(10)); and Penal Code section 368, subdivisions (d) and (e) (Pen. Code, § 803(c)(11)).

which is misconduct in office" and that such conspiracies are therefore subject to the four-year statute of limitations provided for in section 801.5. She contends that whether a conspiracy comes within section 803(c) does not depend on the objective or target offense of the conspiracy; rather, the critical fact is whether the conspiracy itself involves misconduct in office. She differentiates between a conspiracy engaged in by public officials such as the one alleged in this case, where the conspiracy allegedly involves the misuse of public office to attain the goal of the conspiracy, and one engaged in by a person who happens to be a public official or employee but which does not involve the misuse of that person's official capacity.[4] As long as there is a nexus between the person's official capacity and the conspiracy, she contends, it falls within the plain meaning of section 803(c)'s misconduct in office provision. She notes that the California Supreme Court has held, albeit in a different context, that "[a] crime committed in a defendant's official capacity necessarily suffices to establish 'willful or corrupt misconduct in office' under Government Code section 3060." (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 410.) Accordingly, she contends, the phrase "an offense, 'the basis of which is misconduct in office'" includes a criminal conspiracy involving the misuse of a public office or position, even if the objective of the conspiracy is not itself a crime based on misconduct in office.

---

[4] A conspiracy by a public official with others who are not public officials to sell contraband not using public resources at any stage of the conspiracy is one possible example of a conspiracy not subject to section 803(c), as the Attorney General conceives it. In contrast, a conspiracy by a public official in which he or she uses public resources in furtherance of the objective of selling contraband would fall within the Attorney General's conception of section 803(c).

10

On its face, the Attorney General's argument is plausible. Certainly, a public employee or official can engage in a conspiracy to commit a crime purely in his or her private capacity, and the Legislature could choose to apply a shorter statute of limitations for such a private act than for one which does involve the misuse of public office. However, even if the plain meaning of the statute allows for the Attorney General's interpretation, as we discuss below, the California Supreme Court's repeated holding that the statute of limitations for conspiracy is three years creates at least a latent ambiguity as to the Legislature's intent with regard to the inclusion or exclusion of conspiracy in the provisions of sections 803(c) and 801.5. Where there is a latent ambiguity in a statute, a court may resort to extrinsic sources to ascertain the intent of the Legislature. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1495-1496.) And, as we will explain, the Legislature has indicated that it does intend to maintain the three-year statute of limitations for conspiracies to commit crimes which are either enumerated in section 803(c) or which fall within the general categories described in section 803(c). Given these facts, we are not persuaded that the Legislature intended to exclude conspiracies to commit target offenses that are based on misconduct in office but at the same time to include conspiracies that are themselves based on misconduct in office, even though their target offenses are not crimes enumerated or described in section 803(c).

11

*Analysis*

We begin with *Milstein*, *supra*, 211 Cal.App.4th 1158, on which both parties rely.[5] The defendants contend that *Milstein* is dispositive on this issue, asserting that the court in that case held that conspiracy can never be subject to sections 801.5 and 803(c). This is not entirely correct. In *Milstein*, the court addressed whether conspiracy to commit fraud falls within the "material element of which is fraud" clause of section 803(c). (*Milstein*, at pp. 1164-1169.) The court held that it does not. In reaching that conclusion, the court held that because California courts have consistently recognized that conspiracy is a separate and distinct crime from the offense that is the object of the conspiracy, the elements of the target offense are not elements of conspiracy. Accordingly, the court held that fraud is not a material element of conspiracy to commit fraud, and such a conspiracy is not subject to section 801.5. (*Milstein*, at pp. 1166-1168.)

The *Milstein* court went on to discuss the legislative history of section 801.5. The court noted, "[I]t is a well-established principle of statutory construction that the 'Legislature . . . is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.' [Citation.] At the

---

[5] The Attorney General asserts that *Milstein* established a three-part analysis for the purpose of determining whether a conspiracy is subject to section 803(c), and that the final prong of the analysis is whether the charged conspiracy contains a material element of fraud. She asserts that *Milstein* holds that if the conspiracy does not contain a material element of fraud, it may be subject to sections 801.5 and 803(c). She contends that the trial court skipped this "critical third step" in determining whether the conspiracy alleged in this case falls within section 803(c). *Milstein* did not, however, create any type of test for determining whether conspiracies in general come within section 803(c). (*Milstein*, *supra*, 211 Cal.App.4th at pp. 1164-1169.)

time section 801.5 was amended by the Legislature in 1995 to apply a four-year-after-discovery statute of limitations to any offense described in section 803, subdivision (c) (Stats. 1995, ch. 704, § 1, p. 5313), it had long been decided by the California Supreme Court that a three-year statute of limitations applies to criminal conspiracies commencing with the last overt act in furtherance of the conspiracy ([*People v. Zamora* (1976) 18 Cal.3d 538, 548-549, 560; *People v. Crosby* (1962) 58 Cal.2d 713, 727-729]).  However, the Legislature made no attempt to include conspiracy to commit any crime among the offenses subject to a four-year limitations period, either in 1995 when it expanded section 801.5's application to any offense described in section 803, subdivision (c) (Stats. 1995, ch. 704, § 1, p. 5313), or in 1998 when it expanded section 803, subdivision (c)'s list of enumerated offenses (Stats. 1998, ch. 944, § 2, p. 6941).  As this court observed in [*People v. Prevost* (1998) 60 Cal.App.4th 1382], '[l]egislative silence in view of the case law such as [*Davis v. Superior Court* (1959) 175 Cal.App.2d 8], *Crosby* and *Zamora*, is instructive.  It informs us that there is no reason to depart from the legal precedent which provides that criminal conspiracy has a three-year statute of limitations, irrespective of the underlying offense.'  [Citation.]" (*Milstein*, 211 Cal.App.4th at p. 1168, fn. omitted.) Thus, the court did not hold, as defendants assert, that the statute of limitations for conspiracy can *never* be other than three years.  Rather, the court found no reason to conclude that the Legislature intended to apply a four-year statute of limitations to conspiracy based upon the statute of limitations that applies to the conspiracy's target offense.

13

*Milstein*'s discussion of the history underlying sections 803(c) and 801.5 is relevant, however, and the history of sections 801.5 and 803(c) subsequent to *Milstein* demonstrates that (1) the Legislature understood *Milstein* to reflect existing law, i.e., that the crime of conspiracy is not subject to the extended limitations period provided for in section 801.5, and (2) that for financial reasons, the Legislature did not want to *extend* the statute of limitations for conspiracy to commit any of the offenses enumerated or described in section 803(c). In the 2013-2014 legislative session, Senate Bill No. 951 was introduced to add section 801.7 to the Penal Code, to provide that "Prosecution for conspiracy to commit a felony pursuant to Section 182 shall be commenced within the time required for the commencement of prosecution for the underlying crime." (Sen. Bill No. 951 (2013-2014 Reg. Sess.) § 2 <http://www.leginfo.ca.gov/pub/13-14/bill/sen/ sb_0951-1000/sb_951_bill_20140328_amended_sen_v97.pdf> [as of Oct. 14, 2015].) The bill stated, "It is the intent of the Legislature in enacting this act to abrogate *People v. Milstein* (2012) 211 Cal.App.4th 1158 to the extent that it holds that prosecution for the crime of conspiracy to commit a felony must commence within three years. This measure is not intended to undermine the proposition that the period of limitation for conspiracy commences to run with the last overt act committed in furtherance of the conspiracy." (Sen. Bill No. 951 (2013-2014 Reg. Sess.) § 1 <http://www.leginfo.ca.gov/ pub/13-14/bill/sen/sb_0951-1000/sb_951_bill_20140328_amended_sen_v97.pdf> [as of Oct. 14, 2015].)

14

In its analysis of the bill, the Senate Committee on Public Safety noted that "existing law" sets the statute of limitations for conspiracy at three years, and that the statute of limitations does not vary even if the underlying crime is "one of those [crimes] which has its statute of limitation tolled until discovery and extended to four years." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 951 (2013-2014 Reg. Sess.), as amended Mar. 28, 2014, at pp. 9-10 <http://www.leginfo.ca.gov/pub/13-14/bill/sen/ sb_0951-1000/sb_951_cfa_20140421_113259_sen_comm.html> [as of Oct. 14, 2015].) The committee noted that *Milstein* reflects existing law and that proposed bill would "change the law on which that case was based." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 951, at p. 10.)

Senate Bill No. 915 did not become law because the Senate Appropriations Committee was concerned about the costs, potentially in the millions of dollars, that might result from altering existing law to extend the statute of limitations for conspiracy. (Sen. Appropriations Com., Fiscal Analysis of Sen. Bill No. 951 (2013-2014 Reg. Sess.), as amended Mar. 28, 2014, p. 1 <http://www.leginfo.ca.gov/pub/13-14/bill/sen/sb_0951-1000/sb_951_cfa_20140505_120825_sen_comm.html> [as of Oct. 14, 2015].) The committee noted, "By extending the statute of limitations for the crime of conspiracy from three years after the commission of the offense to match that of the underlying crime, this bill could result in substantial increases in the number of prosecutions, and consequently, convictions and commitments to state prison and county jail, for conspiracy to commit a felony offense that otherwise would have been time-barred by the three-year limit under existing law. In addition to the extension of time for those cases in

15

which the existing three-year period for prosecution of conspiracy had not run, the provisions of this bill could potentially revive those cases in which the statute of limitations has already expired, potentially resulting in a substantial number of new prosecutions and subsequent convictions.  As an example, prosecutions for conspiracy to commit murder, for which the three-year window may have passed years ago, could now be reopened for prosecution, as there is no statute of limitations for crimes punishable by death or life without the possibility of parole." (*Id*. at p. 2.)  The committee chair recommended referring the bill to the suspense file (*id.* at p. 1), and the committee ultimately voted to do so.  (<http://www.leginfo.ca.gov/pub/13-14/bill/sen/sb_0951-1000/sb_951_vote_20140505_000001_sen_comm.html> [as of Oct. 14, 2015].)  No further action was taken on the bill.

A court may take judicial notice of the legislative history of a failed bill.  (See *Martin v. Szeto* (2004) 32 Cal.4th 445, 451-452 &  fn. 9.)[6]  Although the legislative history of a failed bill normally offers only limited guidance, if any, concerning the

---

[6] Defendant Burum filed a motion asking us to take judicial notice of three documents:  The Attorney General's petition for review in *Milstein*, *supra*, 211 Cal.App.4th 1158; the Senate Appropriations Committee Fiscal Summary on Senate Bill No. 951; and a one-page document headed "California Legislative Information" showing the final status of Senate Bill No. 951. The Attorney General's petition for review in *Milstein* is not relevant to our resolution of the issue raised in this appeal, and we deny the motion as to it.  We also deny the motion as to the latter two documents, in that the copies of the documents Burum provided do not show their source.

On our own motion, we take judicial notice of the legislative history documents cited herein.  (Evid. Code, § 452, subd. (c); see, generally, *Kaufman & Broad Communities*, *Inc*. *v. Performance Plastering*, *Inc*. (2005) 133 Cal.App.4th 26, 29-39 [discussing what portions of the legislative history file are proper subjects for judicial notice].)

Legislature's original intent in enacting a related statute (*id*. at p. 451), in this case, the bill analysis concerning the proposed enactment of section 801.7 makes it very clear that in enacting section 801.5, the Legislature did not intend that a conspiracy to commit one or more of the offenses described in section 803(c) would be subject to the extended statute of limitations.

Among the offenses enumerated in section 803(c) are several which are clearly based upon misconduct in public office.[7] As the legislative history discussed above reveals, the Legislature did not intend to apply the extended statute of limitation to conspiracy to commit those offenses or other offenses based on misconduct in office.

---

[7] These include Penal Code section 68 (executive or ministerial officer, employee, or appointee of the State of California, a county or city therein, or a political subdivision thereof, asking for, receiving, or agreeing to receive, any bribe, upon any agreement or understanding that his or her vote, opinion, or action upon any matter then pending, or that may be brought before him or her in his or her official capacity, shall be influenced thereby); Penal Code section 86 (public official asking for, receiving or agreeing to receive a bribe upon any understanding that his or her official vote, opinion, judgment, or action shall be influenced thereby); Penal Code section 93 (judicial officer, juror, referee, arbitrator, or umpire, and every person authorized by law to hear or determine any question or controversy asking for, receiving or agreeing to receive any bribe, upon any agreement or understanding that his or her vote, opinion, or decision upon any matters or question which is or may be brought before him or her for decision, shall be influenced thereby) (Pen. Code, § 803(c)(1)); Government Code section 1090 (public officers and employees barred from financial interest in any contract made by them in their official capacity); and Government Code section 27443 (conflicts of interest by public administrator, public guardian, or public conservator) (Pen. Code, § 803(c)(4)).

Nonenumerated offenses, "the basis of which is misconduct in office," include several of those alleged as the target offenses in count 1: Penal Code section 165 (giving bribe to public official with intent to corruptly influence action by the official); Penal Code section 424 (embezzlement and falsification of accounts or misappropriation of public moneys by public officer); and arguably Government Code section 9054 (person obtaining or seeking to obtain thing of value based upon representation that he or she can or will influence a member of a legislative body in regard to any legislative matter).

17

We think it is unlikely that the Legislature did intend to apply the extended statute of limitations to conspiracies to commit offenses which are not enumerated or described in section 803(c), even if those conspiracies could be characterized as having their basis in misconduct in office.  In any event, we are not persuaded by the Attorney General's arguments that the Legislature did so intend.  Moreover, a statute of limitations must be strictly construed in favor of the accused.  (*People v. Zamora*, *supra*, 18 Cal.3d at p. 574.)  Accordingly, we conclude that sections 801.5 and 803(c) do not apply to conspiracy, regardless of the nature or objective of the conspiracy, and that prosecution of count 1 is time-barred.

DISPOSITION

The judgment of dismissal as to count 1 of the indictment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER_____
J.

We concur:


HOLLENHORST_____
Acting P. J.


MILLER_____
J.

18